UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| Universa Investments L.P., <br><br> Plaintiff, <br><br> v. <br><br> Alexander Borodich, an individual, and Universa Corporation Ltd., a foreign company, <br><br> Defendants. | **Case No.: 18-CV-24286** |

**MOTION TO ENFORCE FINAL DEFAULT JUDGMENT AND PERMANENT**

**INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Universa Investments L.P., hereby moves for an order to enforce the Final Default Judgment And Permanent Injunction entered by the Court on February 26, 2019, against Defendants Alexander Borodich and Universa Corporation Ltd. (ECF No. 20).

I.      INTRODUCTION

Plaintiff Universa Investments L.P. ("Plaintiff" or "Universa") brings this motion for an order to enforce the judgment that this Court entered against Defendant Alexander Borodich and his company, Defendant Universa Corporation Ltd., (collectively, "Defendants") in February 2019 (DE 20).

By that judgment, this Court found that Defendants had infringed Plaintiff's registered trademark rights and violated the Anti-Cybersquatting Consumer Protection Act by using the UNIVERSA mark to market and advertise their blockchain financial services and, importantly for this Motion, by using the UNIVERSA mark in the domain name linked to their website. In particular and among things, this Court ordered that domain – universa.io – to be transferred from Defendants to Plaintiff.

Unfortunately, Defendants have flouted that judgment and order. After the judgment, Plaintiff successfully had the universa.io domain transferred from Defendants to Plaintiff, but Defendants began using another domain name – universa.com – to direct to their website that also violated the judgment. On top of that, after Plaintiff's ownership of the universa.io domain inadvertently lapsed – for a matter of hours – Defendants repurchased the domain that they had been relinquished of and ordered not to use by the Court. Plaintiff has also recently discovered that Defendants appear to be using a third infringing domain, universa.co, in connection with their business as well.

The registrar of all three domains, GoDaddy, has required a new Court order to transfer the domains back to their rightful owner, Plaintiff. Plaintiff thus seeks by this Motion an order, pursuant to the existing and still valid judgment, requiring the universa.io, universa.com, and universa.co domains to be transferred to Plaintiff.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Plaintiff Universa Investments L.P. ("Universa" or "Plaintiff") is a Delaware limited partnership with its principal place of business at 2601 South Bayshore Drive, Suite 2030 Miami, Florida. Declaration of N.S. Kathirithamby in Support of Plaintiff's Motion to Enforce Judgment ("Kathirithamby Decl."), ¶ 1. Universa Investments is qualified to do business with the Florida Department of State, and in fact does business in the State of Florida. *Id.*

On information and belief, based on a signed declaration submitted to the United State Patent and Trademark Office, Defendant Alexander Borodich ("Borodich") is a Russian citizen residing at Petrozavodskaya 24-1-56, Moscow, Russian Federation 125414. Declaration of Joseph V, Mauch in Support of Plaintiff's Motion to Enforce Judgment ("Mauch Decl."), ¶ 2.

On information and belief, Defendant Universa Corporation Ltd. ("Universa Corporation") is a private company limited by shares, with its place of incorporation unknown. *Id.,* ¶ 4.

### B. Prior Litigation And Judgment Against Defendants

#### 1. Defendants Seek To Register Their Infringing Trademarks

On January 4, 2018, Defendant Alexander Borodich filed U.S. Trademark Application Serial Numbers 87743231 and 87743257, for the word mark UNIVERSA and a stylized UNIVERSA logo mark (collectively, the "Applications"). Complaint (ECF No. 1), ¶ 13. On July 23, 2018, Plaintiff filed a Notice of Opposition at the United States Patent and Trademark Office to oppose registration of the Applications. *Id.*, ¶ 16. Plaintiff's counsel had a number of email and telephonic communications with Mr. Borodich's

attorney regarding the opposed Applications. Mauch Decl., ¶ 3. On September 28, 2018, Mr. Borodich filed a motion to withdraw the Applications. (ECF No. 1), ¶ 16. Defendants, however, continued to use the UNIVERSA word mark and UNIVERSA logo mark (collectively, the "Infringing Marks") in commerce. *Id.*, ¶ 17.

2. **Plaintiff Files And Serves This Lawsuit On Defendants**

On October 17, 2018, Plaintiff filed the operative Complaint for trademark infringement against Defendants, initiating this action. Mauch Decl., ¶ 5. On October 18, 2018, Plaintiff's counsel sent an email to the attorney representing Mr. Borodich in connection with the Applications informing him of this action, providing him a courtesy copy of the Summons and Complaint, and asking if he was authorized to accept service on behalf of Defendants. *Id.*, ¶ 5. Mr. Borodich's counsel informed Plaintiff's counsel that he was not authorized to accept service on behalf of Mr. Borodich or Defendant Universa Corporation Ltd., that he and his firm no longer represented Defendants, and that he did not have any contact information for Defendants other than the information listed on the Applications. *Id.* On November 15, 2018, Plaintiff's counsel sent the Summons and Complaint by Federal Express International Priority courier service to Defendants at Petrozavodskaya Ulista 24-1-56, Moscow, MC 125414, Russia (the "Address"). Proof of Service of Summons and Complaint on Defendant Alexander Borodich ("Borodich POS") (ECF No. 10), ¶ 3; Proof of Service of Summons and Complaint on Defendant Universa Corporation Ltd. ("Universa POS") (ECF No. 11), ¶ 3. This Address was submitted by Mr. Borodich to the United States Patent and Trademark Office in 2018 as his contact address in connection with his prior applications for federal trademark registration of the UNIVERSA mark that is at issue in this action. (ECF No. 10), ¶ 3. Mr. Borodich is listed as the Chief Executive Officer ("CEO") of Universa Corporation Ltd. on its website at

www.universa.io. (ECF No. 11), ¶ 3. The Summons and Complaint were delivered to the Address on Friday, November 23, 2018. *Id.*, ¶ 5. A true and correct copy of the Proof of Delivery issued by Federal Express is attached as Exhibit B to the Borodich POS and the Universa POS.

### 3. Plaintiff Sends Courtesy Emails To Defendants

On November 27, 2018, Plaintiff's counsel sent an email to Mr. Borodich at the email address of alexander.borodich@gmail.com and to Universa Corporation Ltd. at the email address of support@universa.io, informing them of this action and providing them a courtesy copy of the Summons and Complaint. (ECF No. 10), ¶ 6; (ECF No. 11), ¶ 6. On information and belief, alexander.borodich@gmail.com is Mr. Borodich's personal email address, which he has previously provided to domain name registrars and published on his Twitter account, @borodich. (ECF No. 10), ¶ 6. Support@universa.io is identified as the "contact" email address for Universa Corporation Ltd. on the www.universa.io website. (ECF No. 11), ¶ 6. A true and correct copy of the email, excluding the linked documents, is attached as Exhibit C to the Borodich POS and Universa POS. Defendants failed to respond. Mauch Decl., ¶ 6. On January 4, 2019, Plaintiff's counsel sent another email to Mr. Borodich and Universa Corporation Ltd., informing them that Plaintiff would be requesting entry of default if Defendants did not respond to the Complaint. *Id.*, ¶ 7. Defendants again failed to respond. *Id.*

### 4. Defendants Fail To Respond To The Complaint And Default Is Entered

On January 11, 2019, Plaintiff filed a Request for Entry of Default. (ECF No. 12). On January 14, 2019, the Clerk of the Court entered default against Defendants. (ECF No. 13). On January 16, 2019, Plaintiff's counsel sent an email to Mr. Borodich and Universa Corporation Ltd., informing Defendants that the Court had entered default against them

and that Plaintiff would be seeking a default judgment against them. Mauch Decl., ¶ 8. On February 22, 2019, Plaintiff's counsel followed up with another email to Defendants, informing them that Plaintiff would be filing an Application for Entry of Default Judgment, which was attached to the email, on or before February 25, 2019. *Id*., ¶ 9. On February 25, 2019, Plaintiff filed its Application for Entry of Default Judgment ("Application") and supporting papers. (ECF No. 16, 17, and 18).

### 5. The Court Enters Final Default Judgment And Permanent Injunction

On February 26, 2019, the Court granted Plaintiff's Application and entered a Final Default Judgment And Permanent Injunction against Defendants ("Judgment"). (ECF No. 19 and 20). In pertinent part, the Judgment ordered the following:

> Defendants Alexander Borodich and Universa Corporation, Ltd., and their officers, agents, servants, successors, employees, assigns, any parent and subsidiary business entity, and all others in active concert or participation with Defendants, are hereby permanently enjoined and restrained from:
>
> …
>
> 2. Using the Infringing Marks, or any other trademark or service mark that is confusingly similar to Plaintiff's UNIVERSA marks, on or *in connection with any website, domain name*, and/or media or social media platform, including, without limitation, Defendants' universa.io domain name and Defendants' accounts, usernames, and handles on Facebook, Twitter, Medium, Github, and Reddit;
>
> …
>
> **It is further ORDERED and ADJUDGED** that *Defendants' universa.io domain name shall be transferred to Plaintiff* pursuant to 15 U.S.C. § 1125(d), based on the following facts that Defendants have admitted: Defendants have registered and are using the universa.io domain name, which domain name is identical or confusingly similar to Plaintiff's UNIVERSA marks; at the time of registration of the universa.io domain, on June 26, 2017, Plaintiff's UNIVERSA marks were distinctive; Defendants have no rights or legitimate interests in respect of the domain name; and Defendants had and have a bad faith intent to profit from the UNIVERSA marks in their registration and continued use of the universa.io domain in knowing and willful disregard of Plaintiff's rights.

(ECF No. 20) (emphasis added, except for boldface). The Judgment also made clear that "[t]his Court shall retain jurisdiction for the purposes of interpretation, enforcement and/or modification of this Final Default Judgment and Permanent Injunction." *Id*.

### C.   Enforcement Of The Judgment In 2019

In March 2019, pursuant to the Judgment, Plaintiff contacted various third parties, including social media platforms such as Twitter and Facebook, as well as the registrar of the universa.io domain, in order to effectuate the take down of infringing uses of the UNIVERSA mark and the transfer of the universa.io domain. Kathirithamby Decl. ¶ 3. In March 2019, Plaintiff successfully completed the transfer of the universa.io domain with Plaintiff as the new registrant and GoDaddy as the new registrar. *Id*.

### D.   Defendants' Improper Use Of Universa.com Domain

After Plaintiff was successful in having the universa.io domain transferred from Defendants to them, Plaintiff discovered that Defendants were also using (in direct violation of the Judgment) another domain name to direct to their website: universa.com. Mauch Decl., ¶ 10. Publicly available records show that on February 22, 2018 (before the transfer of universa.io), the universa.com domain was "parked," *i.e.*, it was registered but not connected to an online service like a website or email hosting; but on April 20, 2019 (after the transfer of universa.io), the universa.com domain was linked to Defendants' website marketing their blockchain financial services.[1] *Id*. It is thus clear that, having lost the ability to use their preferred domain of universa.io, Defendants were using the domain name of universa.com, which domain name also infringed Plaintiff's registered trademark

---

[1] Plaintiff had not been aware of Defendants' ownership of the universa.com domain because it was not advertised or referred to by Defendants, on their website or otherwise, and the ownership information of the domain was "privatized." Had Plaintiff been aware of the universa.com domain, it of course would have explicitly included that domain along with the universa.io domain in the proposed injunction. Kathirithamby Decl., ¶ 8.

and violated the Judgment.[2] Plaintiff attempted to stop Defendants from using the universa.com domain, including by filing a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding, but Plaintiff was unsuccessful. *Id*.

### E. Defendants Improperly Retake Control Of The Universa.io Domain

On June 16, 2023, after years of no problems with the universa.io domain, Plaintiff received an email from GoDaddy stating the following: "Your credit card info is missing, you'll need to add that in order to renew your products" and referring to the universa.io domain. Kathirithamby Decl. ¶ 4. After receiving this email, Universa confirmed that GoDaddy had the correct credit card information. *Id*. On June 21, 2023, Plaintiff received an email from GoDaddy stating: "One or more of your domains will auto-renew soon. The good news is *you don't need to take any action*. We just wanted to let you know what's coming up for automatic renewal since you're the registrant contact for this account. Take a look:" and again referring to the universa.io domain. *Id*., ¶ 5 (emphasis added). Based on this email and having confirmed that GoDaddy had the correct payment information, Plaintiff believed that the universa.io domain would auto-renew on June 26, 2023, without Plaintiff needing to take further action. *Id*.

Then, on August 7, 2023, GoDaddy sent Plaintiff an email indicating that "[a] product's been removed from your GoDaddy account" and referring to the ".IO Domain Registration" and the universa.io domain. *Id*., ¶ 6. Until receiving this email, Plaintiff had not received any communications from GoDaddy since the June 21 email indicating that Plaintiff did not need to take any action. *Id*. Plaintiff immediately contacted GoDaddy to recover the Domain, but on August 8, Plaintiff received an email stating, "We are unable

---

[2] Defendants also use the universablockchain.com domain to direct to their website. Plaintiff does not seek any relief related to this domain name.

to reactivate UNIVERSA.IO for you because you requested the redemption past the time frame allotted once the domain expired." *Id*.

Plaintiff then learned, the same day, that GoDaddy was unable to "reactivate" the universa.io domain because, immediately upon the domain not renewing to Plaintiff, GoDaddy had sold the domain to Defendants or agents of Defendants.[3] *Id*., ¶ 7. In particular, Plaintiff discovered that the universa.io domain is now linked to the same website operated by Defendants that it was linked to in 2019 prior to the Judgment and subsequent transfer of the domain. Mauch Decl., ¶ 11. In short, GoDaddy's unclear and misleading communications to Plaintiff resulted in the improper transfer of the universa.io domain back to Defendants.

### F.   Plaintiff Communicates With Registrar Regarding Transfer Back Of The Universa.io Domain

Plaintiff and Plaintiff's counsel repeatedly communicated with the registrar of both domains, GoDaddy, to transfer the universa.io domain back to Plaintiff, providing the Judgment and explaining the situation. Mauch Decl., ¶ 12. However, GoDaddy refused to take any further action without a new court order. *Id*.

### G.   Defendants' Improper Use Of Universa.co Domain

Plaintiff has recently learned that Defendants also appear to be using a third domain, universa.co, in connection with the marketing of their blockchain financial services. Mauch Decl., ¶ 13. Among other things, online articles published by Defendants direct potential customers to contact Defendants at support@universa.co. *Id*. Although Plaintiff is unable at this point to identify exactly who owns the universa.co domain,

---

[3] Plaintiff is unable at this point to identify exactly who the domain was sold to because the registrant information is "privatized," but Plaintiff has reliable information that Defendants or agents of Defendants own the domain for the reasons explained herein. Mauch Decl., ¶ 11.

because the registrant information is "privatized," all available evidence demonstrates that Defendants or their agents own the universa.co domain and use that domain to market their services, in direct violation of the Judgment.

### III. PLAINTIFF IS ENTITLED TO AN ORDER REQUIRING THE UNIVERSA.IO, UNIVERSA.COM, AND UNIVERSA.CO DOMAINS TO BE TRANSFERRED TO PLAINTIFF

#### A. Defendants Have Defied The Judgment With Their Use Of The Two Domain Names

The Court previously found, as set forth in the Judgment, that Defendants' use of the UNIVERSA trademark, including in Defendants' domain names, constituted trademark infringement and breach of the Anti-Cybersquatting Consumer Protection Act, and ordered Defendants to, among other things, cease using the UNIVERSA trademark in any domain name. As explained above and below, Defendants have violated the Judgment by continuing to use the universa.io, universa.com, and universa.co domains.

#### 1. Defendants' Use Of The Universa.io Domain Violates The Judgment

Defendants' repurchase of the universa.io domain, and the use of that domain in connection with their website marketing their blockchain financial services to users in the United States is in direct violation of the Judgment. The Judgment expressly enjoins Defendants and their agents from

> Using the Infringing Marks [including UNIVERSA], or any other trademark or service mark that is confusingly similar to Plaintiff's UNIVERSA marks, on or in connection with any website, domain name, and/or media or social media platform, including, without limitation, Defendants' universa.io domain name . . . .

(ECF No. 20). The Judgment also found that "Defendants have no rights or legitimate interests in respect of the [universa.io] domain name" and ordered that the universa.io domain "shall be transferred to Plaintiff." *Id*. Even if Plaintiff was at fault for letting its ownership of the universa.io domain lapse (which, for the reasons discussed above, was

the result of miscommunication from GoDaddy, not any fault of Plaintiff), such a lapse was unintentional, did not obviate the Judgment, and did not give Defendants or their agents a right to acquire and use the universa.io domain. In short, the Judgment is still in place, and Defendants are in violation of it by using the universa.io domain.

### 2. Defendants' Use Of The Universa.com And Universa.co Domains Violates The Judgment

Defendants' use of the universa.com and universa.co domains also defies the Judgment. Although the universa.com and universa.co domains are not explicitly identified in the Judgment in the same manner as the universa.io domain (because Defendants did not begin using them until after the Judgment issued), use of those domains by Defendants clearly and unequivocally violates the Judgment. Again, the Judgment enjoins Defendants "[u]sing the Infringing Marks [including UNIVERSA], or any other trademark or service mark that is confusingly similar to Plaintiff's UNIVERSA marks, on or in connection with *any* website, *domain name*…" (ECF No. 20)(emphasis added). There is no difference between the three domain names other than the top level domain, and universa.com and universa.co infringe Plaintiff's registered trademark just as much as universa.io does. Defendants and their agents are thus enjoined from using the universa.com and universa.co domains in the same way that they are enjoined from using the universa.io domain.

### B. Defendants' Universa.io, Universa.com, And Universa.co Domains Should Be Transferred to Plaintiff

Plaintiff is entitled to an order requiring the transfer of both the universa.io and the universa.com domains from Defendants to Plaintiff. The Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), prevents a party from using a domain name in bad faith that is identical or confusing similar to another party's trademark. 15 U.S.C. § 1125(d)(1)(A); *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1218

(S.D. Fla. 2004). The Court has already found that Defendants have violated the ACPA. (See ECF No. 19 and 20). And, upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C); *Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001).

Here, the Court's prior findings, the facts set forth above, and the facts set forth in the Complaint, admitted as true by Defendants, all demonstrate that the universa.io, universa.com, and universa.co domain names registered to Defendants and/or their agents violate the ACPA and should be transferred to Plaintiff.

### C. Plaintiff Properly Served Defendants With This Motion

Defendants will be served with and given notice of this Motion. Rule 4(f) of the Federal Rules of Civil Procedure governs service outside the United States. Rule 4(f) provides the following:

> Unless federal law provides otherwise, an individual − other than a minor, an incompetent person, or a person whose waiver has been filed − may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

>   (3) by other means not prohibited by international agreement, as the court orders.

Fed. Rule Civ. Pro. 4(f). Pursuant to Rule 4(h), Rule 4(f) also applies to foreign corporations, partnerships, and unincorporated associations. Fed. Rule Civ. Pro. 4(h)(2); *Smith v. Wolf Performance Ammunition*, 2015 U.S. Dist. LEXIS 8056, *5 (D. Nev. January 23, 2015).

Here, Defendants are located and will be properly served in Russia, just as they have been throughout this litigation. While Russia was originally a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Russia suspended its compliance with the Hague Convention in 2003 and the Russian Central Authority refuses to execute service pursuant to the methods set forth in the Hague Convention. *See, e.g., Smith*, 2015 U.S. Dist. LEXIS 8056 at *7-8 (referring to U.S. Bureau of Consular Affairs circular on international judicial assistance published by the U.S. State Department, which states that "[i]n July 2003, Russia unilaterally suspended all judicial cooperation with the United States in civil and commercial matters"); *Microsoft Corp. v. Doe*, 2014 U.S. Dist. LEXIS 48398, *5 (E.D. Va. January 6, 2014) ("The Russian Federation no longer complies with formal requests for judicial assistance pursuant to the Hague Convention from the United States."); *Delex Inc. v. Sukhoi Civil Aircraft Co.*, 372 P.3d 797 (Wash. 2016) (referring to same U.S. State Department circular regarding Russia's suspension of the Hague Convention); *see also* Mauch Decl., ¶ 14 (providing web address to and copy of U.S. State Department circular).

Given Russia's suspension of the Hague Convention, courts in the United States have consistently allowed plaintiffs to effect service under Rule 4(f)(2), which governs service where "there is no internationally agreed means, or if an international agreement allows but does not specify other means." *See, e.g., Microsoft Corp.*, 2014 U.S. Dist.

LEXIS 48398 at *5 (finding Russia's failure to comply with the Hague Convention allowed for plaintiff to serve defendants in Russia pursuant to Rule 4(f)(2) without even attempting service according to the Hague Convention); *Delex Inc.*, 372 P.3d at 801-2 (same). Rule 4(f)(2) allows service by, among other means, "a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. Rule Civ. Pro. 4(f)(2)(A). Service by mail is authorized by Articles 113 and 115 of the Code of Civil Procedure of the Russian Federation. *See*, *e.g.*, *Microsoft Corp.*, 2014 U.S. Dist. LEXIS 48398 at *6 (service by mail "is authorized by the Code of Civil Procedure of the Russian Federation, Articles 113 and 115, which govern service of process in Russian courts"); Mauch Decl., ¶ 15 (providing web address to and copies of Articles 113 and 115 of the Code of Civil Procedure of the Russian Federation).

Here, service of process will be effected on Defendants in compliance with Articles 113 and 115 of the Code of Civil Procedure of the Russian Federation and Rule 4(f)(2)(A) of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Microsoft Corp.* 2014 U.S. Dist. LEXIS 48398 (E.D. Va. January 6, 2014) (finding service of process on defendant in Russia by means of service of the summons and complaint by mail to be proper under Rule 4(f)(2)(A) of the Federal Rules of Civil Procedure and Articles 113 and 115 of the Code of Civil Procedure of the Russian Federation). Upon completion of the filing of this Motion, Plaintiff will mail − via international courier, just as in *Microsoft Corp.* − the Motion and supporting papers to Defendants at the address listed on Universa Corporation Ltd.'s website at universa.io, as well as to the address submitted (and never modified or updated) by Mr. Borodich, who speaks English and is the CEO of Defendant Universa Corporation Ltd., to the United States Patent and Trademark Office in 2018 as his contact address.

## IV.  CONCLUSION

For the foregoing reasons, the Court should order the transfer of Defendants' universa.io, universa.com, and universa.co domain names to Plaintiff, as set forth in the proposed order submitted with this Motion.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(3)

Pursuant to S.D. Fla. L.R. 7.1(3), undersigned counsel has made a reasonable attempt to confer with Defendant and its counsel by emails on March 14 and 19, 2024, regarding the relief sought in this motion, but has been unable to do so at the time of filing this motion.

Dated:  March 22, 2024

Respectfully submitted by:

/s/ Alexandra de Alejo
Alexandra de Alejo
Florida Bar No. 43108
Alexandra.deAlejo@gray-robinson.com
GRAY|ROBINSON, P.A.
333 SE 2nd Ave., Suite 3200
Miami, Florida 33131
305-416-6880 (Telephone)

and

Joseph V. Mauch
California Bar No. 253693
jmauch@sflaw.com
SHARTSIS FRIESE LLP
425 Market Street, Eleventh Floor
San Francisco, CA 94105
415-421-6500 (Telephone)

*Counsel for Plaintiff.*

10263998